IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Kay F. Paschal, | ) | C/A No. 3:14-4737-TLW-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Leon Lott; Stan Smith; Howard Hughes; Heidi Scott, *a/k/a Heidi Jackson*; *all in their individual and official capacities*; Richland County South Carolina, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Kay F. Paschal filed this civil rights action against the named defendants pursuant to 42 U.S.C. § 1983. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the defendants' motion for summary judgment. (ECF No. 40.) Paschal filed a response in opposition to the defendants' motion (ECF No. 51), and the defendants replied (ECF No. 57). Having reviewed the parties' submissions and the applicable law, the court finds that the defendants' motion should be granted.

**BACKGROUND**

The following facts are either undisputed or are taken in the light most favorable to the plaintiff, to the extent they find support in the record. On February 28, 2011, the Richland County Sheriff's Department ("RCSD") agreed to investigate reports from family members of an 88-year-old alleged victim David Wallace, who died February 20, 2011. These reports alleged suspected neglect and possible exploitation of a vulnerable adult. RCSD Captain Lancy Weeks directed Defendant RCSD Lt. Heidi Scott, who was working with Victim Services and as a Vulnerable Adult

Investigator, to look into the case. Scott began her investigation on March 1, 2011 by meeting with Wallace's adult children and a family friend. The reports to Scott indicated that the plaintiff was Wallace's longtime former attorney with whom Wallace had developed a personal relationship. The plaintiff and Wallace had resided together at Wallace's address for several years. On April 20, 2010, Wallace suffered a serious stroke resulting in an extended hospitalization period and subsequent admission to an inpatient rehabilitation and treatment center. As a result, Wallace was fully dependent on others for his care, and when he returned home, the plaintiff was his primary caregiver.

      Wallace's children expressed several concerns to Scott that arose following Wallace's stroke. First, they alleged that the plaintiff deprived them and others of contact with Wallace. Second, Wallace's children expressed concerns about a power of attorney for Wallace, indicating that three days after Wallace's stroke, the plaintiff recorded a power of attorney identifying herself as Wallace's attorney in fact and Wallace's daughter as standby attorney, which was inconsistent with previous statements by Wallace that Wallace's daughter was Wallace's attorney in fact. Wallace's children were also concerned that the original power of attorney listing Wallace's daughter as Wallace's attorney in fact went unrecorded for eight years, and when it was finally recorded (three days after Wallace's stroke) it had been revised, listing the plaintiff as Wallace's attorney in fact; suspicions that the power of attorney had been used by the plaintiff to financially exploit Wallace's bank accounts; and that when Wallace's children confronted the plaintiff with these concerns as well as concerns about the plaintiff's role in Wallace's care during the final months of his life, the plaintiff resigned as attorney in fact on February 17, 2011. Third, Wallace's son indicated that the plaintiff neglected to provide proper physical care to Wallace, alleging the healthcare decisions made by the plaintiff were substandard and resulted in unnecessary pain and suffering for Wallace,



including removing Wallace from the inpatient rehabilitation and treatment center against medical advice. He further suggested that the plaintiff failed to follow the specific instructions for Wallace's in-home care. Fourth, Wallace's children alleged that the plaintiff inappropriately used Wallace's finances for her benefit while neglecting his expenses, and indicated that a significant amount of Wallace's money and some valuables were missing.

While another officer investigated the allegations of medical neglect, Scott investigated the allegations of financial exploitation. A forensic document examiner and a SLED forensic scientist examined the powers of attorney at issue. The results were consistent, indicating that the first pages of the documents had been added at a later date and were not the original first pages, and the initials on the first pages were not Wallace's initials while the initials on the remaining pages were. Importantly, the first pages were the only pages that identified who was to serve as attorney in fact. The investigation also revealed other discrepancies within the documents such as the fonts and paper stock used.

As part of her investigation, Scott also discovered that on June 18, 2010 in Lexington County, the plaintiff used the power of attorney at issue to trade Wallace's 2002 Cadillac DeVille for a trade-in allowance of $5,000 towards the purchase of a 2010 Toyota Sienna van for a total price of $63,317.51. The plaintiff paid for the balance of the van with a check from Wallace's Ameritrade account in the amount of $58,317.51. Further, Scott indicated that the plaintiff's name was fraudulently placed on the title of the van along with Wallace's name.[1]

---

[1] Also around this time, Scott discovered that financial records and/or computers were potentially moved from Wallace's residence in Richland County to the plaintiff's former residence in Lexington County. On May 4, 2011, Scott appeared before Lexington County Magistrate Whittle and obtained a search warrant for the plaintiff's computer and related storage devices at the plaintiff's former Lexington County residence.



Because this incident occurred in Lexington County, Scott first sought guidance from her superiors and an assistant solicitor for the Fifth Judicial Circuit, all in Richland County, on how to proceed.  At the assistant solicitor's suggestion, Scott sent the file to the Lexington County Sheriff's Department.  The assigned investigator with the Lexington County Sheriff's Department initially looked into the matter and then informed Scott he would be out of the office on medical leave for surgery, and Scott retrieved the file from him.  Scott then sought guidance from the Solicitor for the Eleventh Judicial Circuit and then Scott's own superiors.  Scott and her superiors ultimately concluded that the RCSD could pursue the matter.  Thereafter, on November 15, 2011, Scott met with Lexington County Magistrate Whittle.  Scott identified herself as a RCSD investigator, and the magistrate heard the facts of the investigation from Scott both verbally and in her written affidavits, which Scott signed.  The affidavit for the forgery arrest warrant stated as follows:

> That on or about June 18, 2010, while at 2546 Leaphart Road in the West Columbia area of Lexington County, one Kay Paschal did commit the crime of forgery.  It is believed the defendant committed the crime because she used a fraudulent Power of Attorney in order to purchase a 2010 Toyota Sienna Van VIN #5TDYK4CC3AS334905 for $58,317.51.  The defendant's name was fraudulently placed on the title of the vehicle along with the victim's name.  The victim was considered a vulnerable adult at that time.

(ECF Nos. 41-8 at 2 & 51-7 at 2.)  Further, the affidavit for the breach of trust arrest warrant stated as follows:

> That on or about June 18, 2010, while at 2546 Leaphart Road in the West Columbia area of Lexington County one Kay Paschal did commit the crime of Obtaining Goods Under False Pretense.  It is believed the defendant committed the crime because she used a fraudulent Power of Attorney in order to trade in a 2002 Cadillac DeVille VIN #1G6KF579X2U287628 owned by David Wallace in which she fraudulently received a trade in allowance of $5000.  The $5000 allowance was used toward the purchase a 2010 Toyota Sienna Van.  The defendant's name was fraudulently placed on the title of the vehicle along with the victim's name.  The victim was considered a vulnerable adult at that time.



(ECF Nos. 41-9 at 2 & 51-7 at 2.) Magistrate Whittle issued both arrest warrants; thereafter Scott contacted the plaintiff to advise her that there were two warrants for her arrest and directed her to the detention center for service of the warrants. On November 16, 2011, the plaintiff appeared at the detention center, the warrants were served on her, and she was taken into custody. The plaintiff alleges that at Scott's urging the plaintiff's arrest occurred the day before her hearing in probate court; she was therefore unable to appear at the hearing and the probate court would not continue the matter.

On January 20, 2012, the arrest warrants in Lexington County were dismissed following a preliminary hearing.[2]

Meanwhile, the Richland County investigation continued. On December 6, 2013, Defendant RCSD Investigator Howard Hughes met with Richland County Magistrate Streater, presenting affidavits regarding two counts of forgery against the plaintiff. Magistrate Streater issued both arrest warrants. These warrants were served on December 11, 2013, and the plaintiff was detained at the Richland County detention center for approximately five hours before being released. On December 18, 2013, the plaintiff was indicted by a Richland County grand jury on these charges.

On July 25, 2014, the plaintiff obtained a verdict against Leon Lott as the Sheriff of Richland County in a separate civil case on her state tort claims of abuse of process and malicious prosecution stemming from her arrests in Lexington County.

---

[2] The grounds upon which these charges were dismissed at the preliminary hearing are unclear. The judge did not expressly state whether the dismissal was based on lack of probable cause or lack of jurisdiction.



Thereafter, on November 7, 2014, the plaintiff filed this action in Richland County alleging violations of her constitutional rights pursuant to the Fourth, Sixth, and Fourteenth Amendments. The defendants removed the case to district court.

## DISCUSSION

A.     **Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth



specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322.

**B.     Defendants' Motion for Summary Judgment[3]**

   **1.     Claims Arising Out of Alleged Unconstitutional Conduct by Defendants Scott and Hughes[4]**

As a threshold matter, the defendants assert that they are entitled to qualified immunity. The court agrees.[5]

Qualified immunity shields governmental officials performing discretionary functions from liability for damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) determine whether the right was clearly established

---

[3] Tellingly, the plaintiff's memorandum does not expressly address many of the defendants' arguments. Rather, it relies heavily on the previous jury verdict in the plaintiff's favor in the state court case and requests the court to read the entire trial transcript, which is over 1000 pages. The court declines this invitation because it flies squarely in the face of Rule 56(c), which requires a party to cite to particular parts of materials in the record. Moreover, the one page of the transcript to which the plaintiff does direct the court appears to undermine, rather than support, the point for which she relies upon it.

[4] While the plaintiff mentions in her Amended Complaint both the Fourth and Fourteenth Amendments, these claims all appear to stem from the same alleged unconstitutional conduct. The plaintiff's purported Sixth Amendment claims are addressed separately below.

[5] Notably, the plaintiff does not at all address the defendants' qualified immunity argument in her memorandum in opposition, except, perhaps, in the most conclusory fashion, arguing that law enforcement officers should not be able to violate a plaintiff's rights without accountability. However, as discussed below, the precise purpose of qualified immunity is to shield law enforcement officers who inadvertently violate the Constitution when, as here, the constitutional boundaries of acceptable conduct have not been clearly established by the courts.



at the time of the alleged misconduct.  Pearson v. Callahan, 555 U.S. 223, 231-32 (2009).  Courts may address the two prongs of the qualified immunity analysis in whichever order is appropriate in light of the circumstances of the particular case at hand.  Id. at 235, 242.

In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition."  Parrish v. Cleveland, 372 F.3d 294, 301 (4th Cir. 2004) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).  "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit."  Id. (citations and internal quotation marks omitted).  Moreover,

> [a] Government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.

Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).  In analyzing this prong, a court in this district generally must look only to case law from the United States Supreme Court, the Court of Appeals for the Fourth Circuit, and the South Carolina Supreme Court.  Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir. 1999).

To establish a § 1983 claim based on a Fourth Amendment violation for false arrest or malicious prosecution a plaintiff must show that the seizure was effected without probable cause.  See Massey v. Ojaniit, 759 F.3d 343, 356 (4th Cir. 2014).  Thus, there is no § 1983 claim for false

arrest or malicious prosecution unless the officer lacked probable cause. See Street v. Surdyka, 492 F.2d 368, 372-73 (4th Cir. 1974).

In the specific context of qualified immunity regarding a § 1983 claim asserting an unlawful arrest without probable cause, the Fourth Circuit has held that although the right to be free from arrests without probable cause is clearly established, the circumstances in the particular case must be considered: the right allegedly violated must be defined not at such a high level of generality, but rather in light of the facts confronting the officer at the time. McKinney v. Richland Cty. Sheriff's Dep't, 431 F.3d 415, 419 n.5 (4th Cir. 2005). Applying these precepts to the facts presented here, the issue becomes whether "a reasonable officer in [the defendants'] position could have believed that probable cause existed." Torchinsky v. Siwinski, 942 F.2d 257, 261 (4th Cir. 1991). The Fourth Circuit has recognized that a subsequent determination of probable cause by a magistrate is instructive in a false arrest case, particularly in determining the question of qualified immunity. Id. In general, an arrest made pursuant to a facially valid warrant will not support a claim for false arrest or malicious prosecution under the Fourth Amendment. Porterfield v. Lott, 156 F.3d 563, 568 (4th Cir. 1998). "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." Wadkins v. Arnold, 214 F.3d 535, 539 (4th Cir. 2000) (quoting Malley v. Briggs, 475 U.S. 335, 344-45 (1986)). "The presumption of reasonableness attached to obtaining a warrant can be rebutted where 'a reasonably well-trained officer in [the defendant's] position would have known that his [application] failed to establish probable cause and that he should not have applied for the warrant.'" Torchinsky, 942 F.2d at 262 (quoting Malley, 475 U.S. at 345) (second alteration in original). Therefore, to demonstrate that an officer seized an individual pursuant to an arrest warrant without probable cause,

PJG

a plaintiff must show that the officer "deliberately or with a reckless disregard for the truth made material false statements in his affidavit or omitted from that affidavit material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading." Miller v. Prince George's Cty., 475 F.3d 621, 627 (4th Cir. 2007) (internal quotation marks and citations omitted).

As the Fourth Circuit observed in Torchinsky, the disruption and distress experienced by a person who is arrested for a crime he did not commit should not be minimized. Id. at 264. Nonetheless, the Constitution holds law enforcement officers to a standard of reasonableness, not perfection. See al-Kidd, 563 U.S. at 743 ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.' ") (quoting Malley, 475 U.S. at 341). Further, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992).

Here, although the defendants assert that no constitutional violation occurred, they argue that even assuming the plaintiff's constitutional rights were violated in some manner, the alleged unconstitutionality of the defendants' conduct was not clearly established. (See generally Defs.' Mem. Supp. Summ. J. at 37-39, ECF No. 40-1 at 37-39.) The court concludes that the defendants have more properly defined the specific right at issue, while the plaintiff has described the rights

allegedly violated in the broadest, most general terms.[6]  For example, the plaintiff lists a litany of alleged violations:

> There exists in this case a violation of due process.  There has been an interference with the judicial process.  There has been a malicious prosecution.  There has been a denial of the right to speedy trial.  There has been an illegal search and seizure.  There have been warrants issued based on bogus affidavits.  There has been perjury on the part of [Defendant] Scott.  There has been a wrongful withholding of Plaintiff's personal property.

(Pl.'s Mem. Opp'n Summ. J. at 11, ECF No. 51 at 11.)  However, looking past the smatter of what is largely jury argument and conclusory legal statements in the Plaintiff's sixteen-page memorandum and examining the actual allegations of the Amended Complaint shows that almost all of the

---

[6] To the extent that the plaintiff relies on <u>Goodwin v. Metts</u>, 885 F.2d 157 (4th Cir. 1989), in an attempt to show that the rights at issue were clearly established, the court finds the plaintiff's reliance misplaced.  <u>Goodwin</u> does not address the specific right at issue in this case.



plaintiff's claims are grounded in her contention that she was arrested without probable cause, and that her home was searched and her property seized without probable cause.[7]

As the defendants show in their detailed and well-supported memorandum, Defendant Scott conducted a months' long investigation and consulted with two veteran prosecutors from two different judicial circuits who both opined that she had probable cause to seek a warrant for various offenses. The affidavit supporting the warrant application, although brief, sets forth the affiant's belief that the plaintiff used a fraudulent power of attorney to purchase a minivan with the alleged victim's money. A local magistrate, finding probable cause, issued the warrants.

Courts have found that law enforcement officers, relying on opinions by prosecutors or the issuance of a warrant by a neutral and detached magistrate, are entitled to qualified immunity. See, e.g., Messershmidt v. Millender, 132 S. Ct. 1235 (2012) (finding the officers were entitled to

---

[7] Other "claims" advanced by the plaintiff simply do not implicate rights protected by the United States Constitution and therefore are not remediable under 42 U.S.C. § 1983, which is the source of the only claims raised in the Amended Complaint. (See, e.g., Pl.'s Mem. Opp'n Summ. J. at 12, ECF No. 51 at 12 (invoking S.C. Code Ann. § 23-13-10); see generally Pl.'s Mem. Opp'n Summ. J., ECF No. 51 (relying on state tort claims); see id. at 1, 2, 8, 9, 10, 12 (complaining about a "bogus" counterclaim asserted by Defendant Lott against the plaintiff in the companion state case)). Similarly, the plaintiff also complains of Defendant Scott's actions in providing an affidavit to obtain a search warrant from a Lexington County magistrate when she was a Richland County law enforcement officer. However, she does not attempt to identify what provision of the United States Constitution that action violated, and provides no case law from the United States Supreme Court, Fourth Circuit, or South Carolina Supreme Court that would clearly establish the unconstitutionality of such an action. By contrast, the Honorable Henry M. Herlong, Jr., United States District Judge, has addressed this question and found no constitutional defect. United v. Hardy, No. CR. 7:01-235, C/A 6:06-82-HMH, 2006 WL 208865 (D.S.C. Jan. 25, 2006) ("[U]nder South Carolina law 'the fact that the place to be searched' is outside of the warrant applicant's jurisdiction does not 'in and of itself, render the search warrant invalid.' ") (quoting State v. Hammond, 242 S.E.2d 411, 413 (S.C. 1978)). Moreover, while the parties quibble over whether Defendant Scott was a properly deputized and bonded law enforcement officer under state law, the plaintiff fails to explain how this dispute implicates the United States Constitution. Cf. Street v. Surdyka, 492 F.2d 368, 371 (4th Cir. 1974) ("[N]ot all violations of state law rise to the level of constitutional tort.").



qualified immunity, and stating "the fact that the officers sought and obtained approval of the warrant application from a superior and a deputy district attorney before submitting it to the magistrate provides further support for the conclusion that an officer could reasonably have believed that the scope of the warrant was supported by probable cause"); Wadkins, 214 F.3d at 541 ("Detective Arnold's conference with the Commonwealth's Attorney and the subsequent issuance of the warrants by a neutral and detached magistrate weigh heavily *toward* a finding that Detective Arnold is immune."); McKinney, 413 F.3d at 419; Gomez v. Atkins, 296 F.3d 253 (4th Cir. 2002). As the Fourth Circuit has recognized, "When a police officer protects a suspect's rights by obtaining a warrant from a neutral magistrate, the officer should, in turn, receive some protection from suit under 42 U.S.C. § 1983. Otherwise, the threat of liability would force officers to continuously second-guess the considered decisions of magistrates." Torchinsky, 942 F.2d at 262; see also id. at 261 ("It is noteworthy that two different judicial officers in separate proceedings determined that [the officer] had demonstrated probable cause to support the arrest of [the plaintiffs]").

Here, the plaintiff has presented no evidence from which a reasonable factfinder could determine that Defendant Scott lied in her affidavit or deceived the magistrate. And, although she hints that Defendant Scott withheld material information that would have negated a finding of probable cause, she supports this implication with no evidence, much less a showing that any withholding was intentional or with reckless disregard. See id. at 261. Nor has she shown that the affidavit was so lacking in any indicia of probable cause that Defendant Scott's belief that she had probable cause to seek the warrants was unreasonable. See Wadkins, 214 F.3d at 539. In the face of the extensive case law recognizing that law enforcement officers are generally entitled to rely on the opinions of prosecutors and findings by a neutral and detached magistrates, the court concludes

that, even if the plaintiff's constitutional rights were violated in some manner by Defendant Scott's actions, such a violation would not have been clearly established based on the specific context presented in this case. See Parrish v. Cleveland, 372 F.3d 294, 301 (4th Cir. 2004) ("[I]f it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted[,] then the law affords immunity from suit.") (internal quotation marks and citations omitted).

The case for qualified immunity as to Defendant Hughes is even clearer. In addition to the opinion of the Fifth Circuit Assistant Solicitor and a finding of probable cause by a Richland County magistrate, a grand jury returned indictments for the charges at issue and those criminal charges remain pending against the plaintiff. As the defendants point out, it has long been the law in this country that the return of an indictment by a grand jury establishes probable cause as a matter of law. See, e.g., Ex parte United States, 287 U.S. 241, 250 (1932); Gerstein v. Pugh, 420 U.S. 103, n.19 (1975); see also Kinton v. Mobile Home Indus., Inc., 262 S.E.2d 727, 728 (S.C. 1980).

Finally, the plaintiff's claims against the remaining defendants all appear to be based on the fact that they supervise Defendants Scott and Hughes.[8] To the extent any such claim could lie against these defendants, (but see Defs.' Mem. Supp. Summ. J. at 40-45, ECF No. 40-1 at 40-45), they would be similarly entitled to qualified immunity.

**2.     Sixth Amendment Claims**

The parties appear to interpret the plaintiff's claims asserted under the Sixth Amendment somewhat differently. Whichever type of claim is presented, however, the plaintiff's Sixth Amendment claim fails as a matter of law.

The plaintiff's memorandum in opposition to the defendants' motion for summary judgment appears to characterize this claim as one grounded on the fact that plaintiff has been denied a speedy trial in her criminal case currently pending in Richland County. Because she may raise that issue in the pending state criminal proceeding, any such claim is barred by Younger v. Harris, 401 U.S. 37 (1971) (holding that a federal court should not equitably interfere with state criminal proceedings except in the most narrow and extraordinary of circumstances).

---

[8] Richland County is not responsible for the actions of a sheriff or a deputy sheriff, as sheriff's departments in South Carolina are state agencies, not municipal departments. See Edwards v. Lexington Cty. Sheriff's Dep't, 688 S.E.2d 125, 127 n.1 (S.C. 2010) ("However, under South Carolina law, the sheriff and sheriff's deputies are State, not county, employees."); Gulledge v. Smart, 691 F. Supp. 947, 954-55 (D.S.C. 1988) (same). Moreover, even if the plaintiff could sue the County, she has failed to show that any conduct by the sheriff or his deputies was the result of a governmental policy of Richland County. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692-94 (1978). Similarly, to the extent the defendants are sued in their official capacities for monetary damages, they are not "persons" within the meaning of § 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) ("[N]either a state nor its officials acting in their official capacities are 'persons' under § 1983."); Cone v. Nettles, 417 S.E.2d 523, 524 (S.C. 1992) (holding a deputy sheriff is a state official and, pursuant to Will "is not liable in his official capacity for monetary damages under 42 U.S.C. § 1983"); see also Stewart v. North Carolina, 393 F.3d 484, 490 (4th Cir. 2005) (holding that the state does not waive its general sovereign immunity by removing a § 1983 action to federal court).



By contrast, the defendants characterize the plaintiff's Sixth Amendment claim as being based on the fact that Defendants Scott and Hughes sought arrest or search warrants on two occasions immediately before she had to appear in probate court with regard to the underlying dispute, thus interfering with her ability to litigate her probate case. To the extent the plaintiff is attempting to advance such a claim in this litigation pursuant to the Sixth Amendment, it fails as a matter of law for the reasons outlined in the defendants' memorandum.[9] (See Defs.' Mem. Supp. Summ. J. at 29-32, ECF No. 40-1 at 29-32.)

## RECOMMENDATION

All of the defendants are entitled to qualified immunity on the plaintiff's § 1983 claims based on the Fourth or Fourteenth Amendments. Additionally, any Sixth Amendment claims fail as a matter of law. The court therefore recommends that the defendants' motion for summary judgment be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 12, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

---

[9] To the extent the plaintiff ever raised a Brady-style due process claim, she appears to have abandoned it as she did not address the defendants' arguments in any manner in her response. (See Defs.' Mem. Supp. Summ. J. at 23-24, ECF No. 40-1 at 23-24.)

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).